IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 10, 2012

## DON ALLEN RODGERS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-10-345      Roy B. Morgan, Jr., Judge**

**No. W2011-00632-CCA-R3-PC  - Filed April 26, 2012**

The petitioner, Don Allen Rodgers, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of trial counsel and that his guilty pleas were unknowing and involuntary. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Don Allen Rodgers.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On May 27, 2010, the petitioner entered a best interest guilty plea to robbery and standard guilty pleas to six counts of identity theft in exchange for concurrent terms of twelve years as a Range III, persistent offender for the robbery conviction and twelve years as a Range IV career offender for each of the identity theft convictions, for an effective sentence of twelve years at sixty percent in the Department of Correction. As part of his negotiated pleas, the petitioner was recommended for a drug treatment program.

According to the prosecutor's recitation of the factual bases for the pleas, the robbery conviction was based on the petitioner's actions on December 12, 2009, when, having asked

a man on the street for money, he "grabbed the [victim's] wallet from him and shoved him to the ground and took off running." The identity theft convictions were based on the petitioner's having passed checks made out to himself on the business account of "Parkway Memorial Gardens," which he obtained through his employment at Bledsoe Funeral Home, by assuming the identity of his employer, Shawn Bledsoe.

On November 23, 2010, the petitioner filed a petition for post-conviction relief in which he raised claims of ineffective assistance of counsel and involuntary and unknowing guilty pleas. Specifically, he alleged that he was forced into accepting the State's plea offer due to trial counsel's deficiencies in performance, which included her failure to adequately meet with him, to provide him with discovery, to explore potential defenses, including a diminished capacity defense, and to advise him of the nature of the charges against him and his constitutional rights. The petitioner additionally alleged that he was "acting under a diminished capacity" at the time he entered his pleas and that counsel "exerted undue influence" over him in persuading him to accept the plea offer.

At the March 7, 2011 evidentiary hearing, the petitioner complained that his trial counsel met with him only two or three times at the jail, never showed him any discovery in the case, and failed to discuss the charges or any possible defenses with him. He said that after counsel saw his extensive criminal record, she told him that it was not worthwhile for her to fight the charges. He stated that he asked counsel why he never received a preliminary hearing in the robbery case and how it was possible for him to be charged with identity theft when the checks he passed were written on a business account, but counsel never explained or researched the issues, as he requested.

The petitioner testified that, at the time counsel was representing him, he was having mental problems from the psychotropic medication he was taking and the "traumatic experience" of working with "dead bodies" in the funeral home, which "really triggered [his] drug addiction," and made him start to think about suicide. He said he told counsel about his problems, including the fact that he was hearing dead bodies speak to him, but she completely ignored him, instead looking at him as if she thought he was "trying to play some kind of game with her." He stated he asked counsel to consult with the officials at "the Pathway" about the status of his mental health, but she never did.

The petitioner testified that he was very dissatisfied with counsel and told her that he was going to file a complaint about her with the Board of Professional Responsibility. He said she became very angry with him, told him to do what he had to do, and informed him that she was not going to help him with his case. The petitioner complained that counsel had the "gift of gab" and made multiple promises to him that she did not keep. He said he became so angry at her that he told her to "shut-up" because he did not even want to talk to

her. He stated that he had no faith that she would make any efforts in his behalf and requested several times that the judge appoint different counsel to his case. The judge, however, refused his request each time, and he ultimately felt that he had no recourse but to plead guilty because he was certain that trial counsel would not provide adequate representation for him at trial.

On cross-examination, the petitioner acknowledged that he had confessed to forging his employer's name to the checks. He further acknowledged that he had an extensive criminal history of forgery convictions and that, had he been convicted of forgery at trial, he would have faced six years as a career offender for each count with the possibility of consecutive sentencing. The petitioner insisted, however, that he was guilty of forgery, not identity theft, and that he would not have pled guilty to identity theft had his trial counsel investigated the charges. He said he told the judge during his guilty plea colloquy that he was satisfied with counsel's representation, understood the proceedings, and had no trouble communicating with his counsel because he felt pressured to do so, knowing that counsel would not adequately represent him at trial. He acknowledged having written a letter to counsel in which he stated that he wanted to accept responsibility for his charges and that he wanted drug treatment. He said that counsel proposed the possibility of drug treatment to him and promised him that she would provide it for him but then failed to deliver.

Trial counsel testified that she had been licensed to practice law for fourteen years and had been with the public defender's office for the past four years, during which time she had handled thousands of cases. She said she provided the petitioner with two copies of his discovery, first sending the materials to him on April 15, 2010, and then again on May 26, 2010, after he claimed he had not received the first shipment. Although she could not recall the exact number of times she met with the petitioner, she was confident that she met with him on at least four different occasions and that she reviewed the discovery materials with him "multiple times." She said that they also talked at length about the fact that he had been indicted for identity theft, rather than forgery, and that she repeatedly explained to him that the State was free to indict on whatever charge it thought it could prove at trial.

Trial counsel testified that the petitioner, with his 118 prior convictions, had by far the most extensive criminal record of any she had ever seen. She said that the petitioner was insistent from the beginning that he wanted probation and drug treatment and, although she did not think it was realistic, she asked anyway but was turned down. She stated she told the petitioner she thought trial would be "a disaster" given the proof against him and his credibility problems caused by his prior record, and she therefore advised him that it would be in his best interest to accept the State's offer of concurrent twelve-year sentences at sixty percent. The petitioner told her he had a severe drug problem, but he never mentioned having been at "Pathways" or being on medication. In addition, he never exhibited any

behavior that would have led her to suspect that he was suffering from diminished capacity. To the contrary, he expressed remorse for his actions, demonstrating that he understood the difference between right and wrong, and he exhibited great familiarity with the criminal justice system and the roles that each individual plays within the system.

At the conclusion of the hearing, the post-conviction court issued extensive oral findings of fact and conclusions of law, followed by the entry of a written order, in which it denied the petition on the grounds that the petitioner had failed to carry his burden of proof for either claim.

## **ANALYSIS**

The petitioner argues that trial counsel provided ineffective assistance by her failure to, among other things, meet adequately with him, to provide him with discovery, or to investigate potential defenses. The petitioner additionally argues that his guilty pleas were rendered involuntary due to his "mental health issues and state of mind . . . coupled with the undue pressure placed on [him] by his attorney." The State responds by arguing that the record supports the post-conviction court's finding that the petitioner failed to meet his burden of demonstrating ineffective assistance of counsel or unknowing and involuntary guilty pleas. We agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S.

668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

The petitioner first argues that trial counsel was deficient in her performance, thereby forcing him into his guilty pleas, by her failure to, among other things, explain his case to him or to provide him with copies of his discovery materials. He acknowledges counsel's testimony to the contrary but asserts that his own claims regarding counsel's deficiencies "are corroborated by the fact that [he] made contemporaneous complaints [about trial counsel] to the trial court and the Board of Professional Responsibility."

In denying relief on the basis of this claim, the post-conviction court specifically accredited the testimony of trial counsel over that of the petitioner, finding that counsel's performance, including her advice to the petitioner to accept the plea offer, was not deficient and that the petitioner had failed to meet his burden of showing ineffective assistance of counsel. The record fully supports these findings. According to trial counsel's testimony, she provided the petitioner with two copies of discovery, went over the discovery materials with him on multiple occasions, discussed the evidence against him and possible defenses

to the case, and advised him of the risks of going to trial, given his extensive criminal history. The petitioner's having filed contemporaneous complaints against counsel with the Board of Professional Responsibility and the trial court, rather than corroborating his claims as to her allegedly deficient performance, instead serves to corroborate the fact that he was angry with her and unhappy with her representation. We conclude, therefore, that the post-conviction court did not err in concluding that the petitioner received effective assistance of counsel.

The petitioner also argues that counsel's alleged deficiencies in representation, combined with his diminished mental status, rendered his guilty pleas involuntary and unknowing. When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The transcript of the guilty plea hearing reveals that the trial court informed the petitioner of his constitutional rights and of the specific rights he was waiving by pleading guilty. The petitioner assured the trial court that his counsel had discussed the plea agreement with him, that he fully understood its terms and the constitutional rights he was waiving by entering his plea, and that he was freely and voluntarily entering the plea because he believed it was in his best interest to do so. He also expressed his satisfaction

with trial counsel's representation. At the beginning of the plea colloquy, he answered "yes," when asked if he were under the influence of any mind-altering drugs. Upon further questioning, however, he informed the trial court that the only drug he was taking was prescribed for his "anxiety" and that it did not prevent him from understanding the proceedings.

The record also shows that the petitioner has a very extensive criminal record and great familiarity with the criminal justice system, including the procedure involved in negotiating and pleading guilty in order to avoid a greater sentence at trial. We conclude, therefore, that the post-conviction court did not err in finding that the petitioner's guilty pleas were knowingly, intelligently, and voluntarily entered.

## CONCLUSION

Based on our review, we conclude that the petitioner has not met his burden of showing that trial counsel was ineffective in her representation or that the petitioner's guilty pleas were unknowing and involuntary. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE